UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, as attorney in fact for GE BUSINESS FINANCIAL SERVICES INC., | : : : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : : |
| WIJAYA BARU AVIATION SDN. BHD., WIJAYA BARU HOLDINGS SDN. BHD., KUALA DIMENSI SDN. BHD., DATO SERI TIONG KING SING, WIJAYA INTERNATIONAL MEDICAL CENTER SDN. BHD., WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, solely as OWNER TRUSTEE, and AIRFLYTE, INC. | : : : : : : : : : : |
|  | : |
| Defendants. | : : |

## VERIFIED COMPLAINT

## INTRODUCTION

Plaintiff General Electric Capital Corporation, as attorney in fact for GE Business

Financial Services Inc., formerly known as Merrill Lynch Business Financial Services

Inc. (hereinafter "GE Capital" or "Plaintiff"), hereby complains against defendants

Wijaya Baru Aviation SDN. BHD., a private company organized under the laws of

Malaysia, ("Borrower"), Wijaya Baru Holdings SDN. BHD.,  Kuala Dimensi SDN.

BHD., Dato Seri Tiong King Sing, Wijaya International Medical Center SDN. BHD.,

Wells Fargo Bank Northwest, National Association, solely as Owner Trustee and

Airflyte, Inc. to recover possession of an aircraft temporarily located in Westfield,

1

Massachusetts that Borrower is wrongfully detaining and to recover monies owed under a Promissory Note and related Agreement of Guaranty.

In or around April 2006, GE Capital's predecessor in interest financed the Borrower's purchase of one (1) Learjet Inc. Model 60 aircraft, assigned S/N 298 and U.S. Registration number N729LJ, together with two (2) Pratt & Whitney Canada model PW305A engines, S/N PCE – CA0455 and S/N PCE - CA0454 (together the "Aircraft") in the amount of approximately $8.725 million dollars (the "Loan"). On May 1, 2013, the Loan matured and the sum of $5,933,000.00 became due and payable. No payment was made on maturity. The five (5) day cure period expired and the Borrower's failure to repay the outstanding Loan balance ripened into an Event of Default. As of this date, the Loan has not been paid and the Borrower has not responded to GE Capital's recent inquiries regarding the Loan.

Through this action, Plaintiff seeks monetary damages and an Order of Possession and in Aid of Possession of Aircraft and Other Relief, on short order of notice, delivering possession of the Aircraft to GE Capital so that it may take title to the Aircraft and sell it. Plaintiff seeks these remedies pursuant to its rights under: (1) the note, security agreement and personal guarantees executed by Defendants; (2) an international treaty known as the Convention on International Interests in Mobile Equipment ("Cape Town Convention") and the Protocol to the Cape Town Convention on Matters Specific to Aircraft Equipment (the "Protocol"); (3) the Uniform Commercial Code as enacted under M.G.L. c. 106 §§9-609-610 and 810 ILCS 5/9-609-610; and (4) the Massachusetts State law replevin remedy.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

2

§1331 because GE Capital's claims arise, in part, under the Cape Town Convention and Protocol, an international treaty to which the United States is a signatory.[1]

2.      Alternatively, this Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) and (3) because the amount in controversy exceeds $75,000.00 and there is diversity between GE Capital and the defendants, and citizens or subjects of a foreign state are additional parties.

3.      Pursuant to 28 U.S.C. §1391(b)(2), this Court is the proper venue for this action because the Aircraft is located in Massachusetts.

## PARTIES

4.      Plaintiff GE Capital is a Delaware corporation.  In or around early 2008, GE Capital purchased the stock of Merrill Lynch Business Financial Services Inc. and changed the corporate name to GE Business Financial Services Inc. on March 28, 2008. GE Capital maintains its principal place of business in the state of Connecticut.

5.      The defendant Borrower, Wijaya Baru Aviation SDN. BHD., is a private company organized under the laws of Malaysia, with company  number 382060-U.

6.      The defendant guarantor, Wijaya Baru Holdings SDN. BHD. (Company No.: 334418-T) is an entity organized under the laws of Malaysia ("Wijaya Holdings").

7.      The defendant guarantor, Kuala Dimensi SDN. BHD. (Company No.: 297068-V) is an entity organized under the laws of Malaysia ("Kuala Dimensi").

8.      The defendant guarantor, Dato Seri Tiong King Sing is an individual and citizen of Malaysia ("Dato Seri").

---

[1]      Pursuant to 28 U.S.C. §1331, "[t]he district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

9.      The defendant Aircraft lessee, Wijaya International Medical Center SDN. BHD., is an entity organized under the laws of Malaysia ("Wijaya Medical").

10.     The defendant Wells Fargo Bank Northwest, National Association is a national banking association organized and existing under the laws of the United States of America and is a party named herein not in its individual capacity but solely as the Owner Trustee (the "Trustee"), under a Trust Agreement known as the Wijaya Baru Aircraft Trust Agreement ("Trust Agreement"). The Trustee holds the record title to the Aircraft.

11.     The defendant Airflyte, Inc. is a corporation organized under the laws of Massachusetts and maintains its principal place of business at 200 Hanscom Drive, Bedford Massachusetts, 01730 ("Airflyte").

## FACTS

### GE Capital's Predecessor Financed the Borrower's Purchase of the Aircraft

12.     On or about April 12, 2006, Borrower purchased one (1) Learjet Inc. Model 60 aircraft, with (a) airframe bearing FAA Registration Mark N729LJ and a manufacturer's serial number 298, (b) two (2) Pratt & Whitney Canada PW 305A aircraft engines bearing manufacturer's serial numbers PCE-CAO455 and PCE-CA0454, (c) one (1) Jemini model T-20G-10C3A auxiliary power unit bearing manufacturer's serial number SP-E050418, and (d) standard avionics and equipment, all other accessories, additions, modifications and attachments, replacements and substitutions of the foregoing.

13.     GE Capital's predecessor in interest, Merrill Lynch Business Financial Services Inc. ("MLBFS") agreed to finance Borrower's purchase of the Aircraft by loaning it eight million seven hundred twenty-five thousand and 00/100 dollars

4

($8,725,000.00) (the "Principal").

14.     In connection with the purchase of the Aircraft and Loan, Borrower, as maker, executed a Promissory Note dated April 12, 2006 in favor of MLBFS (the "Note").  A true and accurate copy of the Note is attached hereto as Exhibit A.

15.     Under the Note, Borrower promised to repay MLBFS, and any subsequent holder of the Note, in eighty-four (84) consecutive installments of principal and interest in the amount of $91,350.95 on the first of each month starting on June 1, 2006 and ending on May 1, 2013.  *See* Ex. A, Note, p. 1.  Together with the last installment payment, a final payment of principal in the amount of $5,933,000.00 was due on the maturity date of May 1, 2013 (the "Maturity Payment").  *See* Ex. A, Note, p. 1.

16.     The Note further provides that if any amount due under the Note is not paid within ten (10) business days of the date when due, Borrower must pay a one-time additional administrative and late charge equal to five percent (5%) of the payment or the maximum charge allowable under applicable law.  *Id.*  Additionally, Borrower is required to pay interest on any overdue amounts starting thirty (30) days after the date due until paid at a rate of the lesser of 1.5% per month or the maximum rate allowable under applicable law.  *Id.*  Upon maturity of the Note, Borrower is obligated to pay the Default Rate, or the Interest Rate, i.e. 9.0625%, plus one (1) percent per month of the amount in arrears so long as the amount remains unpaid.

### Borrower and Trustee Execute A Security Agreement
### Granting MLBFS a Security Interest in the Aircraft

17.     In connection with the Loan, the Trustee took title to the Aircraft on behalf of the Borrower.

18.     On April 12, 2006, Borrower, as debtor under the Note, and the Trustee as

Mortgagor, entered into a Loan and Aircraft Security Agreement (S/N 298) with MLBFS, as the Lender and secured party (the "Security Agreement"). A true and accurate copy of the Security Agreement is attached hereto as Exhibit B.

19.     Pursuant to the Security Agreement, the Trustee as Mortgagor granted MLBFS "a first priority security interest" in the Aircraft. *See* Security Agreement, ¶5.1(a). Furthermore, Borrower granted MLBFS a "a first priority security interest" in all of Borrower's right, title and interest in the Trust Agreement, which holds title to the Aircraft. *See* Security Agreement, ¶5.1(b).

20.     Under the Security Agreement, the Trustee as Mortgagor also consented to the registration of an International Interest in the Aircraft in favor of MLBFS within the meaning of the Cape Town Convention and Protocol, and it was so registered. *See* Security Agreement, ¶5.1(a).

21.     The Security Agreement provides that an Event of Default occurs if, among other things, Borrower fails to pay MLBFS any Obligation due under the Note within five (5) days after the amount becomes due at maturity, by acceleration, upon demand or otherwise. *See* Security Agreement, ¶6(a), p. 15, Annex A, Definitions ("Obligations"). An Event of Default also occurs if any of the Guarantors, as alleged below, fails to pay any obligation due under the Note, among other instruments, after any applicable grace period has expired. *See* Security Agreement, ¶6(b), p. 15

22.     Upon the occurrence of an Event of Default, the Security Agreement provides, *inter alia*, that GE Capital may exercise all of the rights and remedies provided under the UCC, a creditor under the Cape Town Convention or any other Applicable Law. *See* Security Agreement, ¶7.2, p. 17, Annex A, Definitions ("Applicable Law").

23.     Specifically, among other remedies GE Capital may, in its sole discretion, without demand or notice of any kind: (i) proceed at law or in equity to enforce specifically Borrower's performance or to recover damages; (ii) terminate the right of any third party to use the Aircraft and require such party to relinquish possession; (iii) enter the premises where the Aircraft is located and take immediate possession of and remove or disable the Aircraft; (iv) sell, lease assign or dispose of the Aircraft at public or private sale or keep the Aircraft idle; and (v) procure the de-registration, export and physical transfer of the Aircraft. *See* Security Agreement, ¶7.2.

## The Guarantors Unconditionally Guarantee the Loan

24.     Contemporaneously with the execution of the Note and Security Agreement and as consideration for MLBFS extending the Loan, Wijaya Holdings, Kuala Dimensi and Dato Seri (together the "Guarantors") each granted an unconditional Guaranty to MLBFS.  A true and accurate copy of the Agreement of Guaranty ("Guaranty") dated April 12, 2006 and executed by each of the Guarantors is attached hereto as Exhibit C.

25.     The Guaranty provides that:

> Guarantor hereby (if more than one, jointly and severally) UNCONDITIONALLY GUARANTEES:
>
> (a) the prompt payment of all principal and interest on the promissory note(s) issued pursuant to the Agreement are due, whether by acceleration or otherwise;
>
> (b) the prompt performance by Borrower and Mortgager of all of their covenants and agreements in the Agreement; and
>
> (c) the prompt payment at maturity by Borrower of any and all sums of money Borrower now or may hereafter become indebted to Lender to pursuant to the Agreement (collectively, the "Obligations").

7

*See* Guaranty, ¶¶(a) – (c), p. 1.

26.    The Guarantors further waived any right to presentment, demand or notice. *See* Guaranty, ¶3, pp. 1-2.

## Borrower Enters Into a
## Lease and Assignment Agreement

27.    On April 12, 2006, Borrower, Wijayu Medical as Lessee and MLBFS entered into a Consent to Lease and Assignment agreement ("Consent Agreement").  A true and accurate copy of the Consent Agreement is attached hereto as <u>Exhibit D</u>.  The Consent Agreement acknowledged and accepted a Lease by Borrower, as lessor, of the Aircraft to Wijaya Medical, as lessee (the "Lease").  *See* Consent Agreement, Ex. B, Aircraft Lease Agreement.

28.    Under the Consent Agreement, the parties acknowledge that, if an Event of Default occurs with respect to the Loan Agreement, the lender (now GE Capital) may exercise all of its rights and remedies available under the Loan Documents or Applicable Law.  *See* Consent Agreement, ¶5.  Furthermore, both the Borrower and Wijaya Medical agreed to cooperate with GE Capital in the exercise of those rights and remedies.  *See* Consent Agreement, ¶5.

29.    The Note, Security Agreement, Guaranty and the Consent Agreement, including the Lease, and any other documents executed in connection with the Loan, are collectively defined as the "Loan Documents."  *See* Security Agreement, p. 17, Annex A, Definitions ("Loan Documents").

## The Cape Town Convention And Protocol Establish
## Jurisdiction and Provide for Prejudgment Relief

30.    On July 21, 2004, the Senate of the 108th Congress ratified the Cape Town Convention and Protocol.  The Protocol became effective on March 1, 2006 after it

8

was ratified by the requisite eight (8) countries. *See* Export-Import Bank of the United

States press release dated February 28, 2006, available at

http://www.exim.gov/newsandevents/releases/2006andprior/2006/cape-town-treaty-on-

cross-border-financing-of-aircraft-helicopters-and-aircraft-engines-takes-effect-today-

mar-1.cfm; Protocol, Article XXVIII.  True and accurate copies of the Convention and

Protocol are attached hereto as Exhibit F and Exhibit G respectively.

      31.     Article 42(1) of the Convention further provides that:

> . . . the courts of a Contracting State chosen by the parties
> to a transaction have jurisdiction in respect of any claim
> brought under this Convention, whether or not the chosen
> forum has a connection with the parties or the transaction.
> Such jurisdiction shall be exclusive unless otherwise agreed
> between the parties.

The Security Agreement provides that any suit arising out of the Security

Agreement or other Loan Documents may be brought in the courts of Illinois "*or in any*

*other state, federal or foreign court as Lender shall deem appropriate.*"  *See* Security

Agreement, ¶8.7 (Emphasis added), p. 17, Annex A, Definitions ("Loan Documents").

      32.    The Convention provides that upon a debtor's default under the terms of a

security agreement, a creditor may take possession or control of an object, sell or grant a

lease of it, and/or collect income from the management of the object.  *See* Convention,

Article 8(1); Article 1(i), (j) (Definitions), Article 11 (Meaning of Default).  The creditor

is also entitled to de-register and transport the airplane.  *See* Protocol, Article IX(1).  In

addition to all of these remedies, the creditor may exercise any other remedies agreed

upon by the parties.  *See* Convention Article 12.

      33.    The Convention also provides for pre-judgment remedies.  Specifically,

under the Convention, a creditor who demonstrates a debtor's default "may, pending final

determination of its claim and to the extent that at any time so agreed, obtain from a court speedy relief in the form of one or more of the following orders as the creditor requests:"

    (a) preservation of the object and its value;

    (b) possession, control or custody of the object;

    (c) immobilization of the object; and

    (d) lease or management of the object.

*See* Convention, Article 13(1) (Relief Pending Final Determination).   Without limiting any of the other rights afforded GE Capital under the Loan Documents, the Security Agreement also expressly recognizes the Lender's right to pursue these specific remedies. *See* Security Agreement, ¶7.3, p. 18 (Relief Pending Final Determination).

34.    Article 14 of the Convention provides that a creditor shall exercise its right to a pre-judgment remedy "*in conformity with the procedure prescribed by the law of the place where the remedy is to be exercised.*" (Emphasis added).

35.    Thus, under the Convention and Protocol, this Court has the jurisdiction and power to grant the relief requested herein in accordance with applicable Federal and Massachusetts procedural remedies.

### Federal and State Law Provide for
### Procedural and Substantive Pre-Judgment relief

36.    Federal Rule of Procedure 64 provides that:

a) Remedies Under State Law — In General.

At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. . .

(b) Specific Kinds of Remedies.

> The remedies available under this rule include the
> following — however designated and regardless of whether
> state procedure requires an independent action:
>
> arrest; attachment; garnishment; replevin; sequestration;
> and other corresponding or equivalent remedies.

37.     Article 9 of the Uniform Commercial Code, as enacted under both M.G.L.

c. 106, §9-609 and 810 ILCS 5/9-609, provides GE Capital with a judicial (and non-

judicial) remedy for repossession of collateral under a security agreement as follows:

> After default, a secured party:
>
> (1) may take possession of the collateral; and
>
> (2) without removal, may render equipment unusable . . .
>
> (b) Judicial and nonjudicial process. A secured party may
> proceed under subsection (a):
>
> (1) pursuant to judicial process; . . .

38.     Furthermore, M.G.L. c. 106, §9-610(a) and 810 ILCS 5/9-610(a) provides

that:

> After default, a secured party may sell, lease, license, or
> otherwise dispose of any or all of the collateral in its
> present condition or following any commercially
> reasonable preparation or processing.

39.     Additionally, M.G.L. c.214, §3 provides a statutory cause of action for

replevin, i.e. recovery of goods wrongfully held or detained.  Accordingly, this Court has

the power to issue an Order of replevin enabling GE Capital to repossess the Aircraft.

**The Borrower and Guarantors Are in Default of the Loan Documents**

40.     On May 1, 2013, the Loan matured and the Maturity Payment of

$5,933,000.00  became due and owing to GE Capital (collectively the "Final Payment").

Neither the Borrower nor any of the Guarantors remitted this amount.  The Borrower and

Guarantors had five (5) days to cure the default of non-payment on May 1, 2013.  As of the filing of this action, no payment has been received by GE Capital.

      41.    All cure periods have passed and the Final Payment of $5,933,000.00, plus interest, late charges, attorneys fees and other charges payable under the Loan remain due and owing.

      42.    GE Capital presently holds a security deposit with respect to the Loan in the amount of seven hundred and fifty thousand dollars ($750,000.00).

### COUNT I
**(Breach of Note and Security Agreement - Borrower)**

      43.    GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

      44.    Borrower had an obligation to repay the outstanding Loan within five (5) business days of the Maturity Date.

      45.    Borrower has failed and refused to make the Final Payment.

      46.    Borrower's failure to pay GE Capital the Final Payment due under the terms of the Note constitutes an Event of Default under the Security Agreement.

      47.    Borrower's breach of the Note and Security Agreement has caused and continues to cause GE Capital damages.

### COUNT II
**(Breach of Guaranty)**

      48.    GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

      49.    Wijaya Baru Aviation SDN. BHD, Wijaya Baru Holdings SDN. BHD., Kuala Dimensi SDN. BHD. and Dato Seri Tiong King Sing each are unconditionally and primarily Liable on the Note and Security Agreement through the Guaranty.

50.    The Maturity Date having passed and the Final Payment not having been made, Guarantors have failed and refused to make the Final Payment.

51.    Guarantors' failure to pay the Final Payment due under the terms of the Note constitutes a breach of the Guaranty.

52.    Guarantors' refusal to comply with their obligations under the Guaranty has caused and continues to cause GE Capital damages.

53.    Guarantors' failure to comply with their obligations as set forth above constitutes a breach of the Guaranty.

### COUNT III
**(Pre-Judgment Repossession and Sale of the Aircraft
Under the Security Agreement)**

54.    GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

55.    The Security Agreement expressly provides that GE Capital may, upon the occurrence of an Event of Default under the Security Agreement, exercise its rights set for the therein and under the UCC, the Convention and other Applicable Law, including taking immediate possession of, de-registering, assigning and selling the Aircraft.

56.    During the pendency of this action, GE Capital is entitled to exercise its pre-judgment rights under the Security Agreement and take immediate possession of, de-register, assign, take title to and/or sell the Aircraft.

### COUNT IV
**(Pre-Judgment Repossession and Sale of the Aircraft
Under the Convention and Protocol)**

57.    GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

58.    The Convention and Protocol expressly provide that GE Capital may,

upon showing that a debtor is in default of its obligations under a credit agreement, initiate a legal proceeding to preserve, immobilize and/or and take possession, control or custody of the Aircraft pending a final determination of the merits of the creditor's claims and exercise any other rights agreed upon by the parties.

59.     During the pendency of this action, GE Capital is entitled to and seeks to exercise its pre-judgment right under the Convention and Protocol to take immediate possession of, de-register, assign, take title to and sell the Aircraft in accordance with applicable Federal and Massachusetts law.

## COUNT V
### (Pre-Judgment Repossession and Sale of the Aircraft Under the U.C.C.)

60.     GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

61.     Article 9 of the Uniform Commercial Code as enacted under M.G.L. c. 106 §§9-609-610 and 810 ILCS 5/9-609-610 provides that GE Capital may, upon Defendants' default of their obligations under the Security Agreement, take possession of and sell the Aircraft through judicial process.

62.     Given that Defendants are in default of their obligations under the Security Agreement, GE Capital is entitled and seeks to take immediate possession of, take title to and sell the Aircraft via an Order from this Court.

## COUNT VI
### (Pre-Judgment Repossession of the Aircraft by Replevin Under Fed. R. Civ. P. 64 and M.G.L. c. 214 §3)

63.     GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

64.     Pursuant to Fed. R. Civ. P. 64, "[a]t the commencement of and throughout

14

an action," the remedy of replevin is available for GE Capital to recover the Aircraft.

65.     Massachusetts General Laws c. 214, §3(a) provides a remedy "to compel

the redelivery of goods or chattels taken or detained from the owner."

66.     GE Capital is entitled to a replevin remedy because it has an immediate

right to possession of the Aircraft, and the Aircraft is, therefore, being wrongfully

detained.

## REQUEST FOR RELIEF

WHEREFORE, GE Capital respectfully requests that the Court:

(1)     ENTER an Order, in the form attached hereto as Exhibit H;

> (a)     enjoining and restraining Defendants from moving, alienating, transferring, pledging, encumbering or hypothecating the Aircraft until further order of this Court;

> (b)     permitting GE Capital and/or its agent Canal Air to take possession, operational control and custody of the Aircraft;

> (c)     permitting GE Capital and/or its agent Canal Air to procure the export and physical transfer of the Aircraft from Airflyte's facility located in Westfield, Massachusetts to a facility under the custody and control of GE Capital, its officers, agents, servants, employees, and/or attorneys;

> (d)     enjoining the Defendants, their officers, agents, servants, employees, and attorneys; and all other persons who are in active concert or participation with the Defendants and/or the aforementioned persons from impeding, obstructing, interfering or hindering the efforts of GE Capital to take possession of the Aircraft and procure the export and physical transfer of the Aircraft from Airflyte's facility located in Westfield, Massachusetts;

> (e)     directing the Defendants to register, or cause their agent to register, as a "transacting user entity" with the International Registry established under the Cape Town Convention, if not already so registered;

> (f)     directing defendant Wells Fargo Bank Northwest, National Association, as Owner Trustee to execute and file with the Federal Aviation Administration a bill of sale transferring all of its right, title an interests in the Aircraft to GE Capital or its designee in the form attached hereto as Exhibit I;

15

(g)     terminating any leases or sublease recorded against the Aircraft;

(h)     directing defendant Wells Fargo Bank Northwest, National Association, as Owner Trustee to appoint Daugherty, Fowler, Peregrin, Haught and Jenson ("DFPHJ") as its "professional user entity" for purposes of registering a Contract of Sale (as such term is defined in the Cape Town Convention) in favor of GE Capital Corporation or its designee with respect to the Aircraft and instructing and authorizing DFPHJ to consent to the registration of said Contract of Sale;

(i)     discharging any International Interests (as such term is defined in the Cape Town Convention) in favor of Defendants or any entity obtaining rights through Defendants; and

(2)     Enter Judgment in favor of GE Capital on all counts of the Verified Complaint;

(3)     Award GE Capital its costs and fees, including its attorneys' fees, incurred in connection with this action; and

(4)     GRANT such other and further relief as the Court deems proper.

GENERAL ELECTRIC CAPITAL
CORPORATION, as attorney in fact for GE
BUSINESS FINANCIAL SERVICES INC.,

By its attorneys

_____

Thomas H. Curran, BBO #550759
tcurran@mccarter.com
Peter Antonelli (BBO# 661526)
pantonelli@mccarter.com
McCarter & English, LLP
265 Franklin Street
Boston, MA  02110-3113
Telephone: (617) 449-6500
Facsimile: (617) 607-9200

May 9, 2013

## VERIFICATION

I, John Yang, as Global Restructuring Solutions Group – Vice President of General Electric Capital Corporation, attorney in fact for plaintiff GE Business Financial Services, Inc., hereby certify under the pains and penalties of perjury that I have reviewed the foregoing Verified Complaint and that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

By: _____

Dated: May 9th, 2013

MEI 15623455v.2