UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GENERAL ELECTRIC CAPITAL
CORPORATION, as attorney in fact for GE
BUSINESS FINANCIAL SERVICES INC.,

    Plaintiff,

v.

WIJAYA BARU AVIATION SDN. BHD.,
WIJAYA BARU HOLDINGS SDN. BHD.,
KUALA DIMENSI SDN. BHD., DATO SERI
TIONG KING SING, WIJAYA
INTERNATIONAL MEDICAL CENTER
SDN. BHD., WELLS FARGO BANK
NORTHWEST, NATIONAL ASSOCIATION,
solely as OWNER TRUSTEE, and AIRFLYTE,
INC.

    Defendants.

# **EXHIBIT C**

ME1 15645574v.1

# MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.
# MERRILL LYNCH CAPITAL DIVISION

## AGREEMENT OF GUARANTY

THIS AGREEMENT OF GUARANTY (this "Guaranty") is executed and delivered by WIJAYA BARU HOLDINGS SDN. BHD. (Company No.: 334418-T), KUALA DIMENSI SDN. BHD. (Company No.: 297068-V) and DATO' SERI TIONG KING SING (Date of Birth: September 3, 1961, with Malaysian Passport No. K10647373) (if more than one, collectively, "Guarantor") in favor of MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC., MERRILL LYNCH CAPITAL DIVISION, its successors and assigns ("Lender"), in connection with that certain Loan and Aircraft Security Agreement dated as of April 12, 2006, by and among Lender, WIJAYA BARU AVIATION SDN. BHD. (Company No.: 362080-U) ("Borrower") and WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, a national banking association organized and existing under the laws of the United States of America, not in its individual capacity but solely as "Owner Trustee" (under a "Trust Agreement", known and denominated as the Wijaya Baru Aircraft Trust and dated as of April 12, 2006, by and between Borrower and Wells Fargo Bank Northwest, National Association) ("Mortgagor"), pursuant to which Borrower has borrowed or is to borrow certain funds from Lender relating to the acquisition of one (1) Learjet Inc. model 60 aircraft, assigned S/N 298 and U.S. registration number N729LJ, together with two (2) Pratt & Whitney Canada model PW305A engines, S/N PCE-CA0455 and S/N PCE-CA0454, which indebtedness is or is to be evidenced by one or more promissory notes executed in connection with such agreement (the agreement and all promissory notes heretofore or hereafter executed pursuant thereto being herein collectively referred to as the "Agreement").

In order to induce Lender to enter into the Agreement (execution and delivery hereof being a condition precedent to Lender's obligations under the Agreement), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby (if more than one, jointly and severally) UNCONDITIONALLY GUARANTEES:

(a) the prompt payment of all principal of and interest on the promissory note(s) issued pursuant to the Agreement when due, whether by acceleration or otherwise;

(b) the prompt performance by Borrower and Mortgagor of all of their covenants and agreements in the Agreement; and

(c) the prompt payment at maturity by Borrower of any and all sums of money for which Borrower now is or may hereafter become indebted to Lender pursuant to the Agreement (collectively, the "Obligations").

1.      This Guaranty is a continuing one and shall terminate only upon full payment of all sums due under the Agreement and the performance of all of the terms, covenants and conditions therein required to be kept, observed or performed by Borrower and/or Mortgagor, including such payment and performance under all promissory notes executed pursuant to the Agreement, whether to be performed before or after the last payment has been made under the Agreement. This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection).

2.      Guarantor authorizes Lender, with Borrower's and Mortgagor's consent where required, without notice or demand, and without affecting its liability hereunder, from time to time to: (a) change the amount, time or manner of payment of the sums required to be paid pursuant to the Agreement; (b) change any of the terms, covenants, conditions or provisions of the Agreement; (c) amend, modify, change or supplement the Agreement; (d) assign the Agreement or the sums payable under the Agreement; (e) consent to Borrower's and/or Mortgagor's assignment of the Agreement; (f) receive and hold security for the payment of this Guaranty or the performance of the Agreement, and exchange, enforce, waive and release any such security; and (g) apply such security and direct the order or manner of sale thereof as Lender in its discretion may determine.

3.      Guarantor waives any right to require Lender to: (a) proceed against Borrower and/or Mortgagor; (b) proceed against or exhaust any security held from Borrower and/or Mortgagor; (c) pursue any other remedy in

Lender's power whatsoever; or (d) notify Guarantor of any default by Borrower or Mortgagor in the payment of any sums required to be paid pursuant to the Agreement or in the performance of any term, covenant or condition therein required to be kept, observed or performed by Borrower or Mortgagor. Guarantor waives any defense arising by reason of any disability or other defense of Borrower or Mortgagor, any lack of authority of Borrower or Mortgagor with respect to the Agreement, the invalidity, illegality or lack of enforceability of the Agreement from any cause whatsoever, the failure of Lender to perfect or maintain perfection of any interest in any collateral, or the cessation from any cause whatsoever of the liability of Borrower or Mortgagor; provided, however, that Guarantor does not waive any defense arising from the due performance by Borrower and/or Mortgagor of the terms and conditions of the Agreement. This Guaranty and Guarantor's payment obligations hereunder shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the Obligations is rescinded or must otherwise be restored or returned by Lender, all as though such payment had not been made. Lender's good faith determination as to whether a payment must be restored or returned shall be binding on Guarantor. Until the payment and performance in full of all of the Obligations, Guarantor waives and shall have no right of subrogation against Borrower or Mortgagor, and waives any right to enforce any remedy which Lender now has or may hereafter have against Borrower or Mortgagor, and waives any benefit of, and any right to participate in, any security now or hereafter held by Lender. Guarantor waives all presentments, demands for performance, notices of non-performance, protests, notices of dishonor, and notices of acceptance of this Guaranty.

4.     Guarantor represents and warrants to Lender that:

(a)     Guarantor (Wijaya Baru Holdings Sdn. Bhd.) has the form of business organization, and is and will remain duly organized and validly existing in good standing under the laws of Malaysia.

(b)     Guarantor (Kuala Dimensi Sdn. Bhd.) has the form of business organization, and is and will remain duly organized and validly existing in good standing under the laws of Malaysia.

(c)     The execution, delivery and performance hereof (with respect to corporate/company guarantors): (1) have been duly authorized by all necessary action consistent with Guarantor's form of organization; (2) do not require any approval or consent of any stockholder, member, partner, trustee or holder of any obligations of Guarantor except such as have been duly obtained; and (3) do not and will not contravene any law, governmental rule, regulation or order now binding on Guarantor, or the organizational documents of Guarantor, or contravene the provisions of, or constitute a default under, or result in the creation of any lien or encumbrance upon the property of Guarantor under, any indenture, mortgage, contract or other agreement to which Guarantor is a party or by which it or its property is bound.

(d)     The execution, delivery and performance hereof by Guarantor (Dato' Seri Tiong King Sing) do not and will not contravene any law, governmental rule, regulation or order now binding on Guarantor, or contravene the provisions of, or constitute a default under, or result in the creation of any lien or encumbrance upon the property of Guarantor under, any indenture, mortgage, contract or other agreement to which Guarantor is a party or by which he or his property is bound.

(e)     The financial statements of Guarantor (Wijaya Baru Holdings Sdn. Bhd. and Kuala Dimensi Sdn. Bhd.) (copies of which have been furnished to Lender) have been prepared in accordance with the provisions of the Companies Act, 1965 and MASB Approved Accounting Standards in Malaysia ("GAAP"), and fairly present Guarantor's financial condition and the results of its operations as of the date of and for the period covered by such statements, and since the date of such statements there has been no material adverse change in such conditions or operations.

(f)     The financial statements of Guarantor (Dato' Seri Tiong King Sing) (copies of which have been furnished to Lender) fairly present Guarantor's financial condition as of the date of such statements, and since the date of such statements there has been no material adverse change in such condition.

(g)     This Guaranty constitutes the legal, valid and binding obligation of Guarantor, (if more than one, jointly and severally) enforceable against Guarantor in accordance with the terms hereof, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally, and by applicable laws (including any applicable common law, equity and Malaysian law) and judicial decisions which may affect the remedies provided herein.

(h)     There are no pending actions or proceedings to which Guarantor is a party, and there are no other pending or threatened actions or proceedings of which Guarantor has knowledge, before any court, arbitrator or administrative agency, which, either individually or in the aggregate, would have a Material Adverse Effect. As used herein, "Material Adverse Effect" shall mean (1) a materially adverse effect on the business, condition (financial or otherwise), operations, performance or properties of Guarantor, or (2) a material impairment of the ability of Guarantor to perform its obligations under or to remain in compliance with this Guaranty. Further, Guarantor is not in default for the deferred purchase price of property or for the payment of any rent which, either individually or in the aggregate, would have the same such effect.

(i)     Guarantor acknowledges and agrees that it will enjoy a substantial economic benefit by virtue of the extension of credit by Lender to Borrower pursuant to the Agreement.

(j)     All the foregoing representations and warranties shall unless the Guarantor notifies the Lender in writing to the contrary be deemed to be correct and complied with in all material aspects so long as this Guaranty shall remain in force.

5.     Guarantor (with respect to corporate/company guarantors) covenants and agrees that it will provide to Lender: (a) within one hundred eighty (180) days after the end of each fiscal year of Guarantor, the balance sheet and related statement of income and statement of changes in financial position of Guarantor, prepared in accordance with GAAP, all in reasonable detail and certified by independent certified public accountants of recognized standing selected by Guarantor and reasonably acceptable to Lender; provided, however, the financial information set forth in this subsection (a) shall be provided to Lender in unaudited form with respect to corporate/company guarantors within one hundred twenty (120) days after the end of each fiscal year of guarantor(s); and (b) within thirty (30) days after the date on which they are filed, all regular periodic reports, forms and other filings required to be made by Guarantor to any securities and exchange commission, if any.

6.     Guarantor (Dato' Seri Tiong King Sing) covenants and agrees that he will provide to Lender on or before February 28 and August 31 of each year, financial statements of Guarantor as of the immediately preceding December 31 and June 30, respectively, prepared in reasonable detail and certified as true and correct by Guarantor.

7.     A default shall be deemed to have occurred hereunder ("Default") if: (a) Guarantor shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder and such failure shall continue unremedied for a period of thirty (30) days after the earlier of the actual knowledge of Guarantor or written notice thereof to Guarantor by Lender; (b) a payment or other default by Guarantor under any loan, lease, guaranty or other financial obligation to Lender or its affiliates which default entitles the other party to such obligation to exercise remedies; (c) a payment default by Guarantor to any Person (as defined in the Agreement) other than Lender in an amount in excess of US$750,000.00; (d) an inaccuracy in any representation or breach of warranty by Guarantor (including any false or misleading representation or warranty) in any financial statement or Loan Document, including any omission of any substantial contingent or unliquidated liability or claim against Guarantor; (e) the failure by Guarantor generally to pay its debts as they become due or its admission in writing of its inability to pay the same, or the commencement of any bankruptcy, insolvency, receivership or similar proceeding by or against Guarantor or any of its properties or business (unless, if involuntary, the proceeding is dismissed within sixty (60) days of the filing thereof) or the rejection of this Guaranty or any other Loan Document in any such proceeding; (f) Guarantor (with respect to corporate/company guarantors) shall (1) enter into any transaction of merger or consolidation where Guarantor is not the surviving entity (such actions being referred to as an "Event"), unless the surviving entity is organized and existing under the laws of such Guarantor's jurisdiction of corporation, and prior to such Event: (A) such Person executes and delivers to Lender (x) an agreement satisfactory to Lender, in its sole discretion, containing such Person's effective assumption, and its agreement to pay, perform, comply with and otherwise be liable for, in a due and punctual manner, all of Guarantor's obligations having previously arisen, or then or thereafter arising, under this Guaranty, and (y) any and all other documents, agreements, instruments, certificates, opinions and filings reasonably requested by Lender; and (B) Lender is satisfied as to the creditworthiness of such Person, and as to such Person's conformance to the other standard criteria then used by Lender when approving transactions similar to the transactions contemplated in this Guaranty; (2) cease to do business as a going concern, liquidate, or dissolve; or (3) sell, transfer, or otherwise dispose of all or substantially all of its assets or property; (g) if Guarantor (with respect to corporate/company Guarantors) is privately held and effective control of Guarantor's voting capital stock/membership interests/partnership interests, issued and outstanding from time to time, is not retained by the present holders (unless Guarantor shall have provided thirty (30) days' prior written notice to Lender of the proposed

disposition and Lender shall have consented thereto in writing); or (h) Guarantor (Dato' Seri Tiong King Sing) dies and his obligations in connection with this Guaranty are not assumed by a party reasonably satisfactory to Lender.

Upon a Default hereunder, Lender may, at its option, declare this Guaranty to be in default by written notice to Guarantor (without election of remedies), and at any time thereafter, may do any one or more of the following, all of which are hereby authorized by Guarantor:

A.  declare the Agreement to be in default and thereafter sue for and recover all liquidated damages, accelerated payments and/or other sums otherwise recoverable from Borrower and/or Mortgagor thereunder; and/or

B.  sue for and recover all damages then or thereafter incurred by Lender as a result of such Default; and/or

C.  seek specific performance of Guarantor's obligations hereunder.

In addition, Guarantor shall be liable for all reasonable attorneys' fees and other costs and expenses incurred by reason of any Default or the exercise of Lender's remedies hereunder and/or under the Agreement. No right or remedy referred to in this Section is intended to be exclusive, but each shall be cumulative, and shall be in addition to any other remedy referred to above or otherwise available at law or in equity, and may be exercised concurrently or separately from time to time.

The failure of Lender to exercise the rights granted hereunder upon any Default by Guarantor shall not constitute a waiver of any such right upon the continuation or reoccurrence of any such Default.

The obligations of Guarantor hereunder are independent of the obligations of Borrower or Mortgagor. A separate action or actions may be brought and prosecuted against Guarantor (or, if more than one, any thereof) whether an action is brought against Borrower and/or Mortgagor or whether Borrower and/or Mortgagor be joined in any such action or actions.

8.  GUARANTOR AGREES THAT THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF LENDER AND GUARANTOR HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF ILLINOIS (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE). Guarantor agrees that any action or proceeding arising out of or relating to this Guaranty may be commenced in any state or Federal court in Cook County, Illinois; and submits to personal jurisdiction in such courts. To the extent permitted by applicable law, Guarantor hereby waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding any claim that it is not personally subject to the jurisdiction of the above-named courts, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper, or that this Guaranty or the subject matter hereof may not be enforced in or by such courts. Guarantor (and each of them) hereby irrevocably designates and appoints the Illinois office of CT Corporation System (the "Agent"), as its attorney-in-fact to receive service of process in any suit, action or proceeding with respect to any matter as to which it submits to jurisdiction as set forth above, it being agreed that service upon such attorney-in-fact shall constitute valid service upon Guarantor or its successors or permitted assigns. Guarantor further agrees that failure of the Agent to send a copy of any such process or otherwise to give notice thereof to Guarantor shall not affect the validity of such service or any judgment in any suit, action or proceeding based thereon. Final judgment in any suit, action or proceeding shall be conclusive, and may be enforced in other jurisdictions by suit on the judgment, a certified or true copy of which shall be conclusive evidence of the fact and of the amount of any indebtedness or liability of Guarantor therein described; provided always that Lender may, at its option, bring suit, or institute other judicial proceedings, against Guarantor or any of its assets in the courts of any country or place where Guarantor or such assets may be found.

9.  GUARANTOR (AND EACH OF THEM) HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR AND LENDER MAY BE PARTIES ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS GUARANTY OR THE AGREEMENT. GUARANTOR AUTHORIZES LENDER TO FILE THIS PROVISION WITH THE CLERK OR JUDGE OF ANY COURT HEARING SUCH CLAIM. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GUARANTOR AND GUARANTOR HEREBY ACKNOWLEDGES THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.

GUARANTOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

10. The obligations of Guarantor under this Guaranty may not be assigned or delegated without the prior written consent of Lender. This Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall be binding upon the personal representatives, heirs, successors and permitted assigns of Guarantor.

11. All notices hereunder shall be in writing, personally delivered, delivered by overnight courier service, sent by facsimile transmission (with confirmation of receipt), or sent by certified mail, return receipt requested, addressed as follows:

If to Guarantor:
Wijaya Baru Holdings Sdn. Bhd. (Company No.: 334418-T)
5th Floor Wijaya International Medical Centre
No. 1, Jalan 215, Section 51, Off Jalan Templer
46050 Petaling Jaya, Malaysia
Selangor Darul Ehsan
Attn: Stephen Abok
Facsimile: 011-603-7785-3117

Kuala Dimensi Sdn. Bhd. (Company No.: 297068-V)
5th Floor Wijaya International Medical Centre
No. 1, Jalan 215, Section 51, Off Jalan Templer
46050 Petaling Jaya, Malaysia
Selangor Darul Ehsan
Attn: Stephen Abok
Facsimile: 011-603-7785-3117

Dato' Seri Tiong King Sing (Passport No.: K10647373)
Unit 23A-05, Block A
Ehsan Ria Condominium
Lot 256 Jalan Bukit 11/2
Section 12, 46200 Petaling Jaya
Selangor, Malaysia
Facsimile: 011-603-7785-4179

If to Lender:
Merrill Lynch Business Financial Services Inc.
Merrill Lynch Capital Division
222 North LaSalle Street, 16th Floor
Chicago, Illinois 60601
Attn: Managing Director
Facsimile: 312-750-6108

or to such other address (or facsimile number) as such party shall from time to time designate in writing to the other party; and shall be effective from the date of receipt.

12. This Guaranty constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be rescinded, amended or modified in any manner except by a document in writing executed by both parties. Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

13. The payment obligations under this Guaranty and the other Loan Documents shall not be discharged by an amount paid in currency other than United States Dollars, whether pursuant to a judgment or otherwise. To the extent that the amount so paid on prompt conversion to United States Dollars and transferred to the specified place of payment

under normal banking procedures does not yield the amount of United States Dollars in such place due under this Guaranty and the other Loan Documents, the payor shall indemnify the payee and any obligee against any such shortfall. In the event that any payment, whether pursuant to a judgment or otherwise, upon conversion and transfer does not result in the payment of such amount of United States Dollars in the specified place of payment, the obligee of such payment shall have a claim against the payor for the additional amount necessary to yield the amount due and owing under this Guaranty and the other Loan Documents and the same shall be a separate cause of action. All such payments or indemnifications to be made under this Guaranty or the other Loan Documents will be made free and clear of any deduction or withholding for any present or future taxes payable under applicable law, and Guarantor agrees to indemnify Lender against any and all such taxes and shall gross-up and include any amount necessary to hold Lender harmless on a net after-tax basis from all taxes required to be paid, withheld or deducted with respect to any such payment to be made to Lender hereunder or under the Loan Documents, such that the net payment received by Lender after such tax payment, withholding or deduction on the grossed-up amount equals the amount called for under this Guaranty or the other Loan Documents, as the case may be.

IN WITNESS WHEREOF, Guarantor has executed this Agreement of Guaranty as of the 12th day of April, 2006.

| | |
|---|---|
| The Common Seal of<br>**WIJAYA BARU HOLDINGS SDN. BHD.**<br>(Company No. 334418-T)<br>was hereunto affixed in accordance<br>with its Articles of Association<br>in the presence of:<br><br>Director<br>Name: TIONG KING SING<br>Passport No.: K 10660190 | Jurisdiction of Organization: Malaysia<br>Form of Organization: Private limited company<br><br><br><br>Director<br>Name IDRIS BIN MAT JANI<br>Passport No.: A 12375236 |
| The Common Seal of<br>**KUALA DIMENSI SDN. BHD.**<br>(Company No. 297068-V)<br>was hereunto affixed in accordance<br>with its Articles of Association<br>in the presence of:<br><br>Director<br>Name: TIONG KING SING<br>Passport No.: K 10660190<br><br>WITNESS/ATTEST<br>FARHAH HAYATI MAMAT<br>ADVOCATES & SOLICITOR<br>KUALA LUMPUR | Jurisdiction of Organization: Malaysia<br>Form of Organization: Private limited company<br><br><br><br>Director<br>Name IDRIS BIN MAT JANI<br>Passport No.: A 12375236<br><br>Name: Dato' Seri Tiong King Sing<br>Passport No. K10047379 K 10660190 |

300625_3                                                6

ATTESTATION/AUTHENTICATION

I, __FARHAH HAYATI MAMAT__, an Advocate and Solicitor of the High Court of Malaya practising at __Kuala Lumpur__, hereby certify that on this ____ day of __6 APR 2006__, 2006, the common seal of WIJAYA BARU HOLDINGS SDN. BHD. (334418-T) was duly affixed to the above written instrument in my presence in accordance with its Articles of Association.

Dated this ____ day of __6 APR 2006__, 2006.

Witness my hand

_____
Advocate & Solicitor
FARHAH HAYATI MAMAT
ADVOCATES & SOLICITOR
KUALA LUMPUR

ATTESTATION/AUTHENTICATION

I, __FARHAH HAYATI MAMAT__, an Advocate and Solicitor of the High Court of Malaya practising at __Kuala Lumpur__, hereby certify that on this ____ day of __6 APR 2006__, 2006, the common seal of KUALA DIMENSI SDN. BHD. (297068-V) was duly affixed to the above written instrument in my presence in accordance with its Articles of Association.

Dated this ____ day of __6 APR 2006__, 2006.

Witness my hand

_____
Advocate & Solicitor
FARHAH HAYATI MAMAT
ADVOCATES & SOLICITOR
KUALA LUMPUR

ATTESTATION/AUTHENTICATION

I, __FARHAH HAYATI MAMAT__, an Advocate and Solicitor of the High Court of Malaya practising at __Kuala Lumpur__, hereby certify that on this ____ day of __6 APR 2006__, 2006, DATO' SERI TIONG KING SING (Malaysian Passport No. K10647373) duly executed the above written instrument in my presence.

Dated this ____ day of __6 APR 2006__, 2006.

Witness my hand

_____
Advocate & Solicitor
FARHAH HAYATI MAMAT
ADVOCATES & SOLICITOR
KUALA LUMPUR