UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, as attorney in fact for GE BUSINESS FINANCIAL SERVICES INC., | : : : : : |
| Plaintiff, | : : |
| v. | : : : |
| WIJAYA BARU AVIATION SDN. BHD., WIJAYA BARU HOLDINGS SDN. BHD., KUALA DIMENSI SDN. BHD., DATO SERI TIONG KING SING, WIJAYA INTERNATIONAL MEDICAL CENTER SDN. BHD., WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, solely as OWNER TRUSTEE, and AIRFLYTE, INC. | : : : : : : : : : : : |
| Defendants. | : : |

# **EXHIBIT E**

# CONVENTION

## ON INTERNATIONAL INTERESTS IN MOBILE EQUIPMENT

**Signed at Cape Town on 16 November 2001**

**COPY CERTIFIED AS BEING
IN CONFORMITY WITH THE ORIGINAL**

**THE SECRETARY GENERAL**

**JOSE ANGELO ESTRELLA FARIA**



**CAPE TOWN**

**16 NOVEMBER 2001**

# CONVENTION

## ON INTERNATIONAL INTERESTS IN MOBILE EQUIPMENT

THE STATES PARTIES TO THIS CONVENTION,

AWARE of the need to acquire and use mobile equipment of high value or particular economic significance and to facilitate the financing of the acquisition and use of such equipment in an efficient manner,

RECOGNISING the advantages of asset-based financing and leasing for this purpose and desiring to facilitate these types of transaction by establishing clear rules to govern them,

MINDFUL of the need to ensure that interests in such equipment are recognised and protected universally,

DESIRING to provide broad and mutual economic benefits for all interested parties,

BELIEVING that such rules must reflect the principles underlying asset-based financing and leasing and promote the autonomy of the parties necessary in these transactions,

CONSCIOUS of the need to establish a legal framework for international interests in such equipment and for that purpose to create an international registration system for their protection,

TAKING INTO CONSIDERATION the objectives and principles enunciated in existing Conventions relating to such equipment,

HAVE AGREED upon the following provisions:

## Chapter I

### Sphere of application and general provisions

#### Article 1 — Definitions

In this Convention, except where the context otherwise requires, the following terms are employed with the meanings set out below:

    (a)    "agreement" means a security agreement, a title reservation agreement or a leasing agreement;

(b)   "assignment" means a contract which, whether by way of security or otherwise, confers on the assignee associated rights with or without a transfer of the related international interest;

(c)   "associated rights" means all rights to payment or other performance by a debtor under an agreement which are secured by or associated with the object;

(d)   "commencement of the insolvency proceedings" means the time at which the insolvency proceedings are deemed to commence under the applicable insolvency law;

(e)   "conditional buyer" means a buyer under a title reservation agreement;

(f)   "conditional seller" means a seller under a title reservation agreement;

(g)   "contract of sale" means a contract for the sale of an object by a seller to a buyer which is not an agreement as defined in (a) above;

(h)   "court" means a court of law or an administrative or arbitral tribunal established by a Contracting State;

(i)   "creditor" means a chargee under a security agreement, a conditional seller under a title reservation agreement or a lessor under a leasing agreement;

(j)   "debtor" means a chargor under a security agreement, a conditional buyer under a title reservation agreement, a lessee under a leasing agreement or a person whose interest in an object is burdened by a registrable non-consensual right or interest;

(k)   "insolvency administrator" means a person authorised to administer the reorganisation or liquidation, including one authorised on an interim basis, and includes a debtor in possession if permitted by the applicable insolvency law;

(l)   "insolvency proceedings" means bankruptcy, liquidation or other collective judicial or administrative proceedings, including interim proceedings, in which the assets and affairs of the debtor are subject to control or supervision by a court for the purposes of reorganisation or liquidation;

(m)   "interested persons" means:

(i)   the debtor;

(ii)   any person who, for the purpose of assuring performance of any of the obligations in favour of the creditor, gives or issues a suretyship or demand guarantee or a standby letter of credit or any other form of credit insurance;

(iii)   any other person having rights in or over the object;

(n)   "internal transaction" means a transaction of a type listed in Article 2(2)(a) to (c) where the centre of the main interests of all parties to such transaction is situated, and the relevant object located (as specified in the Protocol), in the same Contracting State at the

time of the conclusion of the contract and where the interest created by the transaction has been registered in a national registry in that Contracting State which has made a declaration under Article 50(1);

(o)   "international interest" means an interest held by a creditor to which Article 2 applies;

(p)   "International Registry" means the international registration facilities established for the purposes of this Convention or the Protocol;

(q)   "leasing agreement" means an agreement by which one person (the lessor) grants a right to possession or control of an object (with or without an option to purchase) to another person (the lessee) in return for a rental or other payment;

(r)   "national interest" means an interest held by a creditor in an object and created by an internal transaction covered by a declaration under Article 50(1);

(s)   "non-consensual right or interest" means a right or interest conferred under the law of a Contracting State which has made a declaration under Article 39 to secure the performance of an obligation, including an obligation to a State, State entity or an intergovernmental or private organisation;

(t)   "notice of a national interest" means notice registered or to be registered in the International Registry that a national interest has been created;

(u)   "object" means an object of a category to which Article 2 applies;

(v)   "pre-existing right or interest" means a right or interest of any kind in or over an object created or arising before the effective date of this Convention as defined by Article 60(2)(a);

(w)   "proceeds" means money or non-money proceeds of an object arising from the total or partial loss or physical destruction of the object or its total or partial confiscation, condemnation or requisition;

(x)   "prospective assignment" means an assignment that is intended to be made in the future, upon the occurrence of a stated event, whether or not the occurrence of the event is certain;

(y)   "prospective international interest" means an interest that is intended to be created or provided for in an object as an international interest in the future, upon the occurrence of a stated event (which may include the debtor's acquisition of an interest in the object), whether or not the occurrence of the event is certain;

(z)   "prospective sale" means a sale which is intended to be made in the future, upon the occurrence of a stated event, whether or not the occurrence of the event is certain;

(aa)  "Protocol" means, in respect of any category of object and associated rights to which this Convention applies, the Protocol in respect of that category of object and associated rights;

(bb)   "registered" means registered in the International Registry pursuant to Chapter V;

(cc)   "registered interest" means an international interest, a registrable non-consensual right or interest or a national interest specified in a notice of a national interest registered pursuant to Chapter V;

(dd)   "registrable non-consensual right or interest" means a non-consensual right or interest registrable pursuant to a declaration deposited under Article 40;

(ee)   "Registrar" means, in respect of the Protocol, the person or body designated by that Protocol or appointed under Article 17(2)(b);

(ff)   "regulations" means regulations made or approved by the Supervisory Authority pursuant to the Protocol;

(gg)   "sale" means a transfer of ownership of an object pursuant to a contract of sale;

(hh)   "secured obligation" means an obligation secured by a security interest;

(ii)   "security agreement" means an agreement by which a chargor grants or agrees to grant to a chargee an interest (including an ownership interest) in or over an object to secure the performance of any existing or future obligation of the chargor or a third person;

(jj)   "security interest" means an interest created by a security agreement;

(kk)   "Supervisory Authority" means, in respect of the Protocol, the Supervisory Authority referred to in Article 17(1);

(ll)   "title reservation agreement" means an agreement for the sale of an object on terms that ownership does not pass until fulfilment of the condition or conditions stated in the agreement;

(mm)   "unregistered interest" means a consensual interest or non-consensual right or interest (other than an interest to which Article 39 applies) which has not been registered, whether or not it is registrable under this Convention; and

(nn)   "writing" means a record of information (including information communicated by teletransmission) which is in tangible or other form and is capable of being reproduced in tangible form on a subsequent occasion and which indicates by reasonable means a person's approval of the record.

### Article 2 — The international interest

1.     This Convention provides for the constitution and effects of an international interest in certain categories of mobile equipment and associated rights.

2.      For the purposes of this Convention, an international interest in mobile equipment is an interest, constituted under Article 7, in a uniquely identifiable object of a category of such objects listed in paragraph 3 and designated in the Protocol:

      (a)     granted by the chargor under a security agreement;

      (b)     vested in a person who is the conditional seller under a title reservation agreement; or

      (c)     vested in a person who is the lessor under a leasing agreement.

An interest falling within sub-paragraph (a) does not also fall within sub-paragraph (b) or (c).

3.      The categories referred to in the preceding paragraphs are:

      (a)     airframes, aircraft engines and helicopters;

      (b)     railway rolling stock; and

      (c)     space assets.

4.      The applicable law determines whether an interest to which paragraph 2 applies falls within subparagraph (a), (b) or (c) of that paragraph.

5.      An international interest in an object extends to proceeds of that object.

### Article 3 — Sphere of application

1.      This Convention applies when, at the time of the conclusion of the agreement creating or providing for the international interest, the debtor is situated in a Contracting State.

2.      The fact that the creditor is situated in a non-Contracting State does not affect the applicability of this Convention.

### Article 4 — Where debtor is situated

1.      For the purposes of Article 3(1), the debtor is situated in any Contracting State:

      (a)     under the law of which it is incorporated or formed;

      (b)     where it has its registered office or statutory seat;

      (c)     where it has its centre of administration; or

      (d)     where it has its place of business.

2.      A reference in sub-paragraph (d) of the preceding paragraph to the debtor's place of business shall, if it has more than one place of business, mean its principal place of business or, if it has no place of business, its habitual residence.

### Article 5 — Interpretation and applicable law

1.      In the interpretation of this Convention, regard is to be had to its purposes as set forth in the preamble, to its international character and to the need to promote uniformity and predictability in its application.

2.      Questions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, in conformity with the applicable law.

3.      References to the applicable law are to the domestic rules of the law applicable by virtue of the rules of private international law of the forum State.

4.      Where a State comprises several territorial units, each of which has its own rules of law in respect of the matter to be decided, and where there is no indication of the relevant territorial unit, the law of that State decides which is the territorial unit whose rules shall govern. In the absence of any such rule, the law of the territorial unit with which the case is most closely connected shall apply.

### Article 6 — Relationship between the Convention and the Protocol

1.      This Convention and the Protocol shall be read and interpreted together as a single instrument.

2.      To the extent of any inconsistency between this Convention and the Protocol, the Protocol shall prevail.

## Chapter II

## Constitution of an international interest

### Article 7 — Formal requirements

An interest is constituted as an international interest under this Convention where the agreement creating or providing for the interest:

(a)      is in writing;

(b)      relates to an object of which the chargor, conditional seller or lessor has power to dispose;

(c)     enables the object to be identified in conformity with the Protocol; and

(d)     in the case of a security agreement, enables the secured obligations to be determined, but without the need to state a sum or maximum sum secured.

# Chapter III

## Default remedies

### Article 8 — Remedies of chargee

1.      In the event of default as provided in Article 11, the chargee may, to the extent that the chargor has at any time so agreed and subject to any declaration that may be made by a Contracting State under Article 54, exercise any one or more of the following remedies:

(a)     take possession or control of any object charged to it;

(b)     sell or grant a lease of any such object;

(c)     collect or receive any income or profits arising from the management or use of any such object.

2.      The chargee may alternatively apply for a court order authorising or directing any of the acts referred to in the preceding paragraph.

3.      Any remedy set out in sub-paragraph (a), (b) or (c) of paragraph 1 or by Article 13 shall be exercised in a commercially reasonable manner. A remedy shall be deemed to be exercised in a commercially reasonable manner where it is exercised in conformity with a provision of the security agreement except where such a provision is manifestly unreasonable.

4.      A chargee proposing to sell or grant a lease of an object under paragraph 1 shall give reasonable prior notice in writing of the proposed sale or lease to:

(a)     interested persons specified in Article 1(m)(i) and (ii); and

(b)     interested persons specified in Article 1(m)(iii) who have given notice of their rights to the chargee within a reasonable time prior to the sale or lease.

5.      Any sum collected or received by the chargee as a result of exercise of any of the remedies set out in paragraph 1 or 2 shall be applied towards discharge of the amount of the secured obligations.

6.      Where the sums collected or received by the chargee as a result of the exercise of any remedy set out in paragraph 1 or 2 exceed the amount secured by the security interest and any reasonable costs incurred in the exercise of any such remedy, then unless otherwise ordered by the court the chargee shall distribute the surplus among holders of subsequently ranking interests which have been registered

or of which the chargee has been given notice, in order of priority, and pay any remaining balance to the chargor.

## Article 9 — Vesting of object in satisfaction; redemption

1.     At any time after default as provided in Article 11, the chargee and all the interested persons may agree that ownership of (or any other interest of the chargor in) any object covered by the security interest shall vest in the chargee in or towards satisfaction of the secured obligations.

2.     The court may on the application of the chargee order that ownership of (or any other interest of the chargor in) any object covered by the security interest shall vest in the chargee in or towards satisfaction of the secured obligations.

3.     The court shall grant an application under the preceding paragraph only if the amount of the secured obligations to be satisfied by such vesting is commensurate with the value of the object after taking account of any payment to be made by the chargee to any of the interested persons.

4.     At any time after default as provided in Article 11 and before sale of the charged object or the making of an order under paragraph 2, the chargor or any interested person may discharge the security interest by paying in full the amount secured, subject to any lease granted by the chargee under Article 8(1)(b) or ordered under Article 8(2). Where, after such default, the payment of the amount secured is made in full by an interested person other than the debtor, that person is subrogated to the rights of the chargee.

5.     Ownership or any other interest of the chargor passing on a sale under Article 8(1)(b) or passing under paragraph 1 or 2 of this Article is free from any other interest over which the chargee's security interest has priority under the provisions of Article 29.

## Article 10 — Remedies of conditional seller or lessor

In the event of default under a title reservation agreement or under a leasing agreement as provided in Article 11, the conditional seller or the lessor, as the case may be, may:

(a)     subject to any declaration that may be made by a Contracting State under Article 54, terminate the agreement and take possession or control of any object to which the agreement relates; or

(b)     apply for a court order authorising or directing either of these acts.

## Article 11 — Meaning of default

1.     The debtor and the creditor may at any time agree in writing as to the events that constitute a default or otherwise give rise to the rights and remedies specified in Articles 8 to 10 and 13.

2.    Where the debtor and the creditor have not so agreed, "default" for the purposes of Articles 8 to 10 and 13 means a default which substantially deprives the creditor of what it is entitled to expect under the agreement.

### Article 12 — Additional remedies

Any additional remedies permitted by the applicable law, including any remedies agreed upon by the parties, may be exercised to the extent that they are not inconsistent with the mandatory provisions of this Chapter as set out in Article 15.

### Article 13 — Relief pending final determination

1.    Subject to any declaration that it may make under Article 55, a Contracting State shall ensure that a creditor who adduces evidence of default by the debtor may, pending final determination of its claim and to the extent that the debtor has at any time so agreed, obtain from a court speedy relief in the form of such one or more of the following orders as the creditor requests:

> (a)    preservation of the object and its value;

> (b)    possession, control or custody of the object;

> (c)    immobilisation of the object; and

> (d)    lease or, except where covered by sub-paragraphs (a) to (c), management of the object and the income therefrom.

2.    In making any order under the preceding paragraph, the court may impose such terms as it considers necessary to protect the interested persons in the event that the creditor:

> (a)    in implementing any order granting such relief, fails to perform any of its obligations to the debtor under this Convention or the Protocol; or

> (b)    fails to establish its claim, wholly or in part, on the final determination of that claim.

3.    Before making any order under paragraph 1, the court may require notice of the request to be given to any of the interested persons.

4.    Nothing in this Article affects the application of Article 8(3) or limits the availability of forms of interim relief other than those set out in paragraph 1.

### Article 14 — Procedural requirements

Subject to Article 54(2), any remedy provided by this Chapter shall be exercised in conformity with the procedure prescribed by the law of the place where the remedy is to be exercised.

### Article 15 — Derogation

In their relations with each other, any two or more of the parties referred to in this Chapter may at any time, by agreement in writing, derogate from or vary the effect of any of the preceding provisions of this Chapter except Articles 8(3) to (6), 9(3) and (4), 13(2) and 14.

# Chapter IV

## The international registration system

### Article 16 — The International Registry

1.   An International Registry shall be established for registrations of:

    (a)   international interests, prospective international interests and registrable non-consensual rights and interests;

    (b)   assignments and prospective assignments of international interests;

    (c)   acquisitions of international interests by legal or contractual subrogations under the applicable law;

    (d)   notices of national interests; and

    (e)   subordinations of interests referred to in any of the preceding sub-paragraphs.

2.   Different international registries may be established for different categories of object and associated rights.

3.   For the purposes of this Chapter and Chapter V, the term "registration" includes, where appropriate, an amendment, extension or discharge of a registration.

### Article 17 — The Supervisory Authority and the Registrar

1.   There shall be a Supervisory Authority as provided by the Protocol.

2.   The Supervisory Authority shall:

    (a)   establish or provide for the establishment of the International Registry;

    (b)   except as otherwise provided by the Protocol, appoint and dismiss the Registrar;

    (c)   ensure that any rights required for the continued effective operation of the International Registry in the event of a change of Registrar will vest in or be assignable to the new Registrar;

(d)    after consultation with the Contracting States, make or approve and ensure the publication of regulations pursuant to the Protocol dealing with the operation of the International Registry;

(e)    establish administrative procedures through which complaints concerning the operation of the International Registry can be made to the Supervisory Authority;

(f)    supervise the Registrar and the operation of the International Registry;

(g)    at the request of the Registrar, provide such guidance to the Registrar as the Supervisory Authority thinks fit;

(h)    set and periodically review the structure of fees to be charged for the services and facilities of the International Registry;

(i)    do all things necessary to ensure that an efficient notice-based electronic registration system exists to implement the objectives of this Convention and the Protocol; and

(j)    report periodically to Contracting States concerning the discharge of its obligations under this Convention and the Protocol.

3.    The Supervisory Authority may enter into any agreement requisite for the performance of its functions, including any agreement referred to in Article 27(3).

4.    The Supervisory Authority shall own all proprietary rights in the data bases and archives of the International Registry.

5.    The Registrar shall ensure the efficient operation of the International Registry and perform the functions assigned to it by this Convention, the Protocol and the regulations.


# Chapter V

## Other matters relating to registration

### Article 18 — Registration requirements

1.    The Protocol and regulations shall specify the requirements, including the criteria for the identification of the object:

(a)    for effecting a registration (which shall include provision for prior electronic transmission of any consent from any person whose consent is required under Article 20);

(b)    for making searches and issuing search certificates, and, subject thereto;

(c)    for ensuring the confidentiality of information and documents of the International Registry other than information and documents relating to a registration.

2.     The Registrar shall not be under a duty to enquire whether a consent to registration under Article 20 has in fact been given or is valid.

3.     Where an interest registered as a prospective international interest becomes an international interest, no further registration shall be required provided that the registration information is sufficient for a registration of an international interest.

4.     The Registrar shall arrange for registrations to be entered into the International Registry data base and made searchable in chronological order of receipt, and the file shall record the date and time of receipt.

5.     The Protocol may provide that a Contracting State may designate an entity or entities in its territory as the entry point or entry points through which the information required for registration shall or may be transmitted to the International Registry. A Contracting State making such a designation may specify the requirements, if any, to be satisfied before such information is transmitted to the International Registry.

### Article 19 — Validity and time of registration

1.     A registration shall be valid only if made in conformity with Article 20.

2.     A registration, if valid, shall be complete upon entry of the required information into the International Registry data base so as to be searchable.

3.     A registration shall be searchable for the purposes of the preceding paragraph at the time when:

    (a)     the International Registry has assigned to it a sequentially ordered file number; and

    (b)     the registration information, including the file number, is stored in durable form and may be accessed at the International Registry.

4.     If an interest first registered as a prospective international interest becomes an international interest, that international interest shall be treated as registered from the time of registration of the prospective international interest provided that the registration was still current immediately before the international interest was constituted as provided by Article 7.

5.     The preceding paragraph applies with necessary modifications to the registration of a prospective assignment of an international interest.

6.     A registration shall be searchable in the International Registry data base according to the criteria prescribed by the Protocol.

### Article 20 — Consent to registration

1.     An international interest, a prospective international interest or an assignment or prospective assignment of an international interest may be registered, and any such registration amended or extended prior to its expiry, by either party with the consent in writing of the other.

2.     The subordination of an international interest to another international interest may be registered by or with the consent in writing at any time of the person whose interest has been subordinated.

3.     A registration may be discharged by or with the consent in writing of the party in whose favour it was made.

4.     The acquisition of an international interest by legal or contractual subrogation may be registered by the subrogee.

5.     A registrable non-consensual right or interest may be registered by the holder thereof.

6.     A notice of a national interest may be registered by the holder thereof.

### Article 21 — Duration of registration

Registration of an international interest remains effective until discharged or until expiry of the period specified in the registration.

### Article 22 — Searches

1.     Any person may, in the manner prescribed by the Protocol and regulations, make or request a search of the International Registry by electronic means concerning interests or prospective international interests registered therein.

2.     Upon receipt of a request therefor, the Registrar, in the manner prescribed by the Protocol and regulations, shall issue a registry search certificate by electronic means with respect to any object:

    (a)     stating all registered information relating thereto, together with a statement indicating the date and time of registration of such information; or

    (b)     stating that there is no information in the International Registry relating thereto.

3.     A search certificate issued under the preceding paragraph shall indicate that the creditor named in the registration information has acquired or intends to acquire an international interest in the object but shall not indicate whether what is registered is an international interest or a prospective international interest, even if this is ascertainable from the relevant registration information.

### Article 23 — List of declarations and declared non-consensual rights or interests

The Registrar shall maintain a list of declarations, withdrawals of declaration and of the categories of nonconsensual right or interest communicated to the Registrar by the Depositary as having been declared by Contracting States in conformity with Articles 39 and 40 and the date of each such declaration or withdrawal of declaration. Such list shall be recorded and searchable in the name of the declaring State and shall be made available as provided in the Protocol and regulations to any person requesting it.

### Article 24 — Evidentiary value of certificates

A document in the form prescribed by the regulations which purports to be a certificate issued by the International Registry is prima facie proof:

    (a)    that it has been so issued; and

    (b)    of the facts recited in it, including the date and time of a registration.

### Article 25 — Discharge of registration

1.    Where the obligations secured by a registered security interest or the obligations giving rise to a registered non-consensual right or interest have been discharged, or where the conditions of transfer of title under a registered title reservation agreement have been fulfilled, the holder of such interest shall, without undue delay, procure the discharge of the registration after written demand by the debtor delivered to or received at its address stated in the registration.

2.    Where a prospective international interest or a prospective assignment of an international interest has been registered, the intending creditor or intending assignee shall, without undue delay, procure the discharge of the registration after written demand by the intending debtor or assignor which is delivered to or received at its address stated in the registration before the intending creditor or assignee has given value or incurred a commitment to give value.

3.    Where the obligations secured by a national interest specified in a registered notice of a national interest have been discharged, the holder of such interest shall, without undue delay, procure the discharge of the registration after written demand by the debtor delivered to or received at its address stated in the registration.

4.    Where a registration ought not to have been made or is incorrect, the person in whose favour the registration was made shall, without undue delay, procure its discharge or amendment after written demand by the debtor delivered to or received at its address stated in the registration.

### Article 26 — Access to the
### international registration facilities

No person shall be denied access to the registration and search facilities of the International Registry on any ground other than its failure to comply with the procedures prescribed by this Chapter.

# Chapter VI

Privileges and immunities of
the Supervisory Authority and the Registrar

### Article 27 — Legal personality; immunity

1.　　The Supervisory Authority shall have international legal personality where not already possessing such personality.

2.　　The Supervisory Authority and its officers and employees shall enjoy such immunity from legal or administrative process as is specified in the Protocol.

3.　　(a)　　The Supervisory Authority shall enjoy exemption from taxes and such other privileges as may be provided by agreement with the host State.

　　　　(b)　　For the purposes of this paragraph, "host State" means the State in which the Supervisory Authority is situated.

4.　　The assets, documents, data bases and archives of the International Registry shall be inviolable and immune from seizure or other legal or administrative process.

5.　　For the purposes of any claim against the Registrar under Article 28(1) or Article 44, the claimant shall be entitled to access to such information and documents as are necessary to enable the claimant to pursue its claim.

6.　　The Supervisory Authority may waive the inviolability and immunity conferred by paragraph 4.

# Chapter VII

Liability of the Registrar

### Article 28 — Liability and financial assurances

1.　　The Registrar shall be liable for compensatory damages for loss suffered by a person directly resulting from an error or omission of the Registrar and its officers and employees or from a malfunction of the international registration system except where the malfunction is caused by an event of an inevitable and irresistible nature, which could not be prevented by using the best practices in current use in the field of electronic registry design and operation, including those related to back-up and systems security and networking.

2.　　The Registrar shall not be liable under the preceding paragraph for factual inaccuracy of registration information received by the Registrar or transmitted by the Registrar in the form in which

it received that information nor for acts or circumstances for which the Registrar and its officers and employees are not responsible and arising prior to receipt of registration information at the International Registry.

3.     Compensation under paragraph 1 may be reduced to the extent that the person who suffered the damage caused or contributed to that damage.

4.     The Registrar shall procure insurance or a financial guarantee covering the liability referred to in this Article to the extent determined by the Supervisory Authority, in accordance with the Protocol.

## Chapter VIII

## Effects of an international interest as against third parties

### Article 29 — Priority of competing interests

1.     A registered interest has priority over any other interest subsequently registered and over an unregistered interest.

2.     The priority of the first-mentioned interest under the preceding paragraph applies:

    (a)     even if the first-mentioned interest was acquired or registered with actual knowledge of the other interest; and

    (b)     even as regards value given by the holder of the first-mentioned interest with such knowledge.

3.     The buyer of an object acquires its interest in it:

    (a)     subject to an interest registered at the time of its acquisition of that interest; and

    (b)     free from an unregistered interest even if it has actual knowledge of such an interest.

4.     The conditional buyer or lessee acquires its interest in or right over that object:

    (a)     subject to an interest registered prior to the registration of the international interest held by its conditional seller or lessor; and

    (b)     free from an interest not so registered at that time even if it has actual knowledge of that interest.

5.     The priority of competing interests or rights under this Article may be varied by agreement between the holders of those interests, but an assignee of a subordinated interest is not bound by an agreement to subordinate that interest unless at the time of the assignment a subordination had been registered relating to that agreement.

6.      Any priority given by this Article to an interest in an object extends to proceeds.

7.      This Convention:

    (a)     does not affect the rights of a person in an item, other than an object, held prior to its installation on an object if under the applicable law those rights continue to exist after the installation; and

    (b)     does not prevent the creation of rights in an item, other than an object, which has previously been installed on an object where under the applicable law those rights are created.

### Article 30 — Effects of insolvency

1.      In insolvency proceedings against the debtor an international interest is effective if prior to the commencement of the insolvency proceedings that interest was registered in conformity with this Convention.

2.      Nothing in this Article impairs the effectiveness of an international interest in the insolvency proceedings where that interest is effective under the applicable law.

3.      Nothing in this Article affects:

    (a)     any rules of law applicable in insolvency proceedings relating to the avoidance of a transaction as a preference or a transfer in fraud of creditors; or

    (b)     any rules of procedure relating to the enforcement of rights to property which is under the control or supervision of the insolvency administrator.

# Chapter IX

## Assignments of associated rights and international interests; rights of subrogation

### Article 31 — Effects of assignment

1.      Except as otherwise agreed by the parties, an assignment of associated rights made in conformity with Article 32 also transfers to the assignee:

    (a)     the related international interest; and

    (b)     all the interests and priorities of the assignor under this Convention.

2.      Nothing in this Convention prevents a partial assignment of the assignor's associated rights. In the case of such a partial assignment the assignor and assignee may agree as to their respective rights

concerning the related international interest assigned under the preceding paragraph but not so as adversely to affect the debtor without its consent.

3.      Subject to paragraph 4, the applicable law shall determine the defences and rights of set-off available to the debtor against the assignee.

4.      The debtor may at any time by agreement in writing waive all or any of the defences and rights of set-off referred to in the preceding paragraph other than defences arising from fraudulent acts on the part of the assignee.

5.      In the case of an assignment by way of security, the assigned associated rights revest in the assignor, to the extent that they are still subsisting, when the obligations secured by the assignment have been discharged.

### Article 32 — Formal requirements of assignment

1.      An assignment of associated rights transfers the related international interest only if it:

    (a)      is in writing;

    (b)      enables the associated rights to be identified under the contract from which they arise; and

    (c)      in the case of an assignment by way of security, enables the obligations secured by the assignment to be determined in accordance with the Protocol but without the need to state a sum or maximum sum secured.

2.      An assignment of an international interest created or provided for by a security agreement is not valid unless some or all related associated rights also are assigned.

3.      This Convention does not apply to an assignment of associated rights which is not effective to transfer the related international interest.

### Article 33 — Debtor's duty to assignee

1.      To the extent that associated rights and the related international interest have been transferred in accordance with Articles 31 and 32, the debtor in relation to those rights and that interest is bound by the assignment and has a duty to make payment or give other performance to the assignee, if but only if:

    (a)      the debtor has been given notice of the assignment in writing by or with the authority of the assignor; and

    (b)      the notice identifies the associated rights.

2.      Irrespective of any other ground on which payment or performance by the debtor discharges the latter from liability, payment or performance shall be effective for this purpose if made in accordance with the preceding paragraph.

3.      Nothing in this Article shall affect the priority of competing assignments.

### Article 34 — Default remedies in respect of assignment by way of security

In the event of default by the assignor under the assignment of associated rights and the related international interest made by way of security, Articles 8, 9 and 11 to 14 apply in the relations between the assignor and the assignee (and, in relation to associated rights, apply in so far as those provisions are capable of application to intangible property) as if references:

    (a)     to the secured obligation and the security interest were references to the obligation secured by the assignment of the associated rights and the related international interest and the security interest created by that assignment;

    (b)     to the chargee or creditor and chargor or debtor were references to the assignee and assignor;

    (c)     to the holder of the international interest were references to the assignee; and

    (d)     to the object were references to the assigned associated rights and the related international interest.

### Article 35 — Priority of competing assignments

1.      Where there are competing assignments of associated rights and at least one of the assignments includes the related international interest and is registered, the provisions of Article 29 apply as if the references to a registered interest were references to an assignment of the associated rights and the related registered interest and as if references to a registered or unregistered interest were references to a registered or unregistered assignment.

2.      Article 30 applies to an assignment of associated rights as if the references to an international interest were references to an assignment of the associated rights and the related international interest.

### Article 36 — Assignee's priority with respect to associated rights

1.      The assignee of associated rights and the related international interest whose assignment has been registered only has priority under Article 35(1) over another assignee of the associated rights:

    (a)     if the contract under which the associated rights arise states that they are secured by or associated with the object; and

    (b)     to the extent that the associated rights are related to an object.

2.      For the purposes of sub-paragraph (b) of the preceding paragraph, associated rights are related to an object only to the extent that they consist of rights to payment or performance that relate to:

(a)    a sum advanced and utilised for the purchase of the object;

(b)    a sum advanced and utilised for the purchase of another object in which the assignor held another international interest if the assignor transferred that interest to the assignee and the assignment has been registered;

(c)    the price payable for the object;

(d)    the rentals payable in respect of the object; or

(e)    other obligations arising from a transaction referred to in any of the preceding subparagraphs.

3.      In all other cases, the priority of the competing assignments of the associated rights shall be determined by the applicable law.

### Article 37 — Effects of assignor's insolvency

The provisions of Article 30 apply to insolvency proceedings against the assignor as if references to the debtor were references to the assignor.

### Article 38 — Subrogation

1.      Subject to paragraph 2, nothing in this Convention affects the acquisition of associated rights and the related international interest by legal or contractual subrogation under the applicable law.

2.      The priority between any interest within the preceding paragraph and a competing interest may be varied by agreement in writing between the holders of the respective interests but an assignee of a subordinated interest is not bound by an agreement to subordinate that interest unless at the time of the assignment a subordination had been registered relating to that agreement.

## Chapter X

## Rights or interests subject to declarations by Contracting States

### Article 39 — Rights having priority without registration

1.      A Contracting State may at any time, in a declaration deposited with the Depositary of the Protocol declare, generally or specifically:

(a)   those categories of non-consensual right or interest (other than a right or interest to which Article 40 applies) which under that State's law have priority over an interest in an object equivalent to that of the holder of a registered international interest and which shall have priority over a registered international interest, whether in or outside insolvency proceedings; and

(b)   that nothing in this Convention shall affect the right of a State or State entity, intergovernmental organisation or other private provider of public services to arrest or detain an object under the laws of that State for payment of amounts owed to such entity, organisation or provider directly relating to those services in respect of that object or another object.

2.     A declaration made under the preceding paragraph may be expressed to cover categories that are created after the deposit of that declaration.

3.     A non-consensual right or interest has priority over an international interest if and only if the former is of a category covered by a declaration deposited prior to the registration of the international interest.

4.     Notwithstanding the preceding paragraph, a Contracting State may, at the time of ratification, acceptance, approval of, or accession to the Protocol, declare that a right or interest of a category covered by a declaration made under sub-paragraph (a) of paragraph 1 shall have priority over an international interest registered prior to the date of such ratification, acceptance, approval or accession.

## Article 40 — Registrable non-consensual rights or interests

A Contracting State may at any time in a declaration deposited with the Depositary of the Protocol list the categories of non-consensual right or interest which shall be registrable under this Convention as regards any category of object as if the right or interest were an international interest and shall be regulated accordingly. Such a declaration may be modified from time to time.

# Chapter XI

## Application of the Convention to sales

### Article 41 — Sale and prospective sale

This Convention shall apply to the sale or prospective sale of an object as provided for in the Protocol with any modifications therein.

## Chapter XII

Jurisdiction

### Article 42 — Choice of forum

1.      Subject to Articles 43 and 44, the courts of a Contracting State chosen by the parties to a transaction have jurisdiction in respect of any claim brought under this Convention, whether or not the chosen forum has a connection with the parties or the transaction. Such jurisdiction shall be exclusive unless otherwise agreed between the parties.

2.      Any such agreement shall be in writing or otherwise concluded in accordance with the formal requirements of the law of the chosen forum.

### Article 43 — Jurisdiction under Article 13

1.      The courts of a Contracting State chosen by the parties and the courts of the Contracting State on the territory of which the object is situated have jurisdiction to grant relief under Article 13(1)(a), (b), (c) and Article 13(4) in respect of that object.

2.      Jurisdiction to grant relief under Article 13(1)(d) or other interim relief by virtue of Article 13(4) may be exercised either:

    (a)    by the courts chosen by the parties; or

    (b)    by the courts of a Contracting State on the territory of which the debtor is situated, being relief which, by the terms of the order granting it, is enforceable only in the territory of that Contracting State.

3.      A court has jurisdiction under the preceding paragraphs even if the final determination of the claim referred to in Article 13(1) will or may take place in a court of another Contracting State or by arbitration.

### Article 44 — Jurisdiction to make orders against the Registrar

1.      The courts of the place in which the Registrar has its centre of administration shall have exclusive jurisdiction to award damages or make orders against the Registrar.

2.      Where a person fails to respond to a demand made under Article 25 and that person has ceased to exist or cannot be found for the purpose of enabling an order to be made against it requiring it to procure discharge of the registration, the courts referred to in the preceding paragraph shall have exclusive jurisdiction, on the application of the debtor or intending debtor, to make an order directed to the Registrar requiring the Registrar to discharge the registration.

3.      Where a person fails to comply with an order of a court having jurisdiction under this Convention or, in the case of a national interest, an order of a court of competent jurisdiction requiring that person to procure the amendment or discharge of a registration, the courts referred to in paragraph 1 may direct the Registrar to take such steps as will give effect to that order.

4.      Except as otherwise provided by the preceding paragraphs, no court may make orders or give judgments or rulings against or purporting to bind the Registrar.

#### Article 45 — Jurisdiction in respect of insolvency proceedings

The provisions of this Chapter are not applicable to insolvency proceedings.

# Chapter XIII

## Relationship with other Conventions

#### Article 45 *bis* — Relationship with the *United Nations Convention on the Assignment of Receivables in International Trade*

This Convention shall prevail over the *United Nations Convention on the Assignment of Receivables in International Trade*, opened for signature in New York on 12 December 2001, as it relates to the assignment of receivables which are associated rights related to international interests in aircraft objects, railway rolling stock and space assets.

#### Article 46 — Relationship with the *UNIDROIT Convention on International Financial Leasing*

The Protocol may determine the relationship between this Convention and the *UNIDROIT Convention on International Financial Leasing*, signed at Ottawa on 28 May 1988.

# Chapter XIV

## Final provisions

#### Article 47 — Signature, ratification, acceptance, approval or accession

1.      This Convention shall be open for signature in Cape Town on 16 November 2001 by States participating in the Diplomatic Conference to Adopt a Mobile Equipment Convention and an Aircraft Protocol held at Cape Town from 29 October to 16 November 2001. After 16 November 2001, the Convention shall be open to all States for signature at the Headquarters of the International Institute for the Unification of Private Law (UNIDROIT) in Rome until it enters into force in accordance with Article 49.

2.      This Convention shall be subject to ratification, acceptance or approval by States which have signed it.

3.      Any State which does not sign this Convention may accede to it at any time.

4.      Ratification, acceptance, approval or accession is effected by the deposit of a formal instrument to that effect with the Depositary.

### Article 48 — Regional Economic Integration Organisations

1.      A Regional Economic Integration Organisation which is constituted by sovereign States and has competence over certain matters governed by this Convention may similarly sign, accept, approve or accede to this Convention. The Regional Economic Integration Organisation shall in that case have the rights and obligations of a Contracting State, to the extent that that Organisation has competence over matters governed by this Convention. Where the number of Contracting States is relevant in this Convention, the Regional Economic Integration Organisation shall not count as a Contracting State in addition to its Member States which are Contracting States.

2.      The Regional Economic Integration Organisation shall, at the time of signature, acceptance, approval or accession, make a declaration to the Depositary specifying the matters governed by this Convention in respect of which competence has been transferred to that Organisation by its Member States. The Regional Economic Integration Organisation shall promptly notify the Depositary of any changes to the distribution of competence, including new transfers of competence, specified in the declaration under this paragraph.

3.      Any reference to a "Contracting State" or "Contracting States" or "State Party" or "States Parties" in this Convention applies equally to a Regional Economic Integration Organisation where the context so requires.

### Article 49 — Entry into force

1.      This Convention enters into force on the first day of the month following the expiration of three months after the date of the deposit of the third instrument of ratification, acceptance, approval or accession but only as regards a category of objects to which a Protocol applies:

     (a)     as from the time of entry into force of that Protocol;

     (b)     subject to the terms of that Protocol; and

     (c)     as between States Parties to this Convention and that Protocol.

2.      For other States this Convention enters into force on the first day of the month following the expiration of three months after the date of the deposit of their instrument of ratification, acceptance, approval or accession but only as regards a category of objects to which a Protocol applies and subject, in relation to such Protocol, to the requirements of sub-paragraphs (a), (b) and (c) of the preceding paragraph.

### Article 50 — Internal transactions

1.      A Contracting State may, at the time of ratification, acceptance, approval of, or accession to the Protocol, declare that this Convention shall not apply to a transaction which is an internal transaction in relation to that State with regard to all types of objects or some of them.

2.      Notwithstanding the preceding paragraph, the provisions of Articles 8(4), 9(1), 16, Chapter V, Article 29, and any provisions of this Convention relating to registered interests shall apply to an internal transaction.

3.      Where notice of a national interest has been registered in the International Registry, the priority of the holder of that interest under Article 29 shall not be affected by the fact that such interest has become vested in another person by assignment or subrogation under the applicable law.

### Article 51 — Future Protocols

1.      The Depositary may create working groups, in co-operation with such relevant non-governmental organisations as the Depositary considers appropriate, to assess the feasibility of extending the application of this Convention, through one or more Protocols, to objects of any category of high-value mobile equipment, other than a category referred to in Article 2(3), each member of which is uniquely identifiable, and associated rights relating to such objects.

2.      The Depositary shall communicate the text of any preliminary draft Protocol relating to a category of objects prepared by such a working group to all States Parties to this Convention, all member States of the Depositary, member States of the United Nations which are not members of the Depositary and the relevant intergovernmental organisations, and shall invite such States and organisations to participate in intergovernmental negotiations for the completion of a draft Protocol on the basis of such a preliminary draft Protocol.

3.      The Depositary shall also communicate the text of any preliminary draft Protocol prepared by such a working group to such relevant non-governmental organisations as the Depositary considers appropriate. Such non-governmental organisations shall be invited promptly to submit comments on the text of the preliminary draft Protocol to the Depositary and to participate as observers in the preparation of a draft Protocol.

4.      When the competent bodies of the Depositary adjudge such a draft Protocol ripe for adoption, the Depositary shall convene a diplomatic conference for its adoption.

5.      Once such a Protocol has been adopted, subject to paragraph 6, this Convention shall apply to the category of objects covered thereby.

6.      Article 45 *bis* of this Convention applies to such a Protocol only if specifically provided for in that Protocol.

### Article 52 — Territorial units

1.      If a Contracting State has territorial units in which different systems of law are applicable in relation to the matters dealt with in this Convention, it may, at the time of ratification, acceptance, approval or accession, declare that this Convention is to extend to all its territorial units or only to one or more of them and may modify its declaration by submitting another declaration at any time.

2.      Any such declaration shall state expressly the territorial units to which this Convention applies.

3.      If a Contracting State has not made any declaration under paragraph 1, this Convention shall apply to all territorial units of that State.

4.      Where a Contracting State extends this Convention to one or more of its territorial units, declarations permitted under this Convention may be made in respect of each such territorial unit, and the declarations made in respect of one territorial unit may be different from those made in respect of another territorial unit.

5.      If by virtue of a declaration under paragraph 1, this Convention extends to one or more territorial units of a Contracting State:

     (a)      the debtor is considered to be situated in a Contracting State only if it is incorporated or formed under a law in force in a territorial unit to which this Convention applies or if it has its registered office or statutory seat, centre of administration, place of business or habitual residence in a territorial unit to which this Convention applies;

     (b)      any reference to the location of the object in a Contracting State refers to the location of the object in a territorial unit to which this Convention applies; and

     (c)      any reference to the administrative authorities in that Contracting State shall be construed as referring to the administrative authorities having jurisdiction in a territorial unit to which this Convention applies.

### Article 53 — Determination of courts

A Contracting State may, at the time of ratification, acceptance, approval of, or accession to the Protocol, declare the relevant "court" or "courts" for the purposes of Article 1 and Chapter XII of this Convention.

### Article 54 — Declarations regarding remedies

1.      A Contracting State may, at the time of ratification, acceptance, approval of, or accession to the Protocol, declare that while the charged object is situated within, or controlled from its territory the chargee shall not grant a lease of the object in that territory.

2.      A Contracting State shall, at the time of ratification, acceptance, approval of, or accession to the Protocol, declare whether or not any remedy available to the creditor under any provision of this

Convention which is not there expressed to require application to the court may be exercised only with leave of the court.

### Article 55 — Declarations regarding relief
### pending final determination

A Contracting State may, at the time of ratification, acceptance, approval of, or accession to the Protocol, declare that it will not apply the provisions of Article 13 or Article 43, or both, wholly or in part. The declaration shall specify under which conditions the relevant Article will be applied, in case it will be applied partly, or otherwise which other forms of interim relief will be applied.

### Article 56 — Reservations and declarations

1.      No reservations may be made to this Convention but declarations authorised by Articles 39, 40, 50, 52, 53, 54, 55, 57, 58 and 60 may be made in accordance with these provisions.

2.      Any declaration or subsequent declaration or any withdrawal of a declaration made under this Convention shall be notified in writing to the Depositary.

### Article 57 — Subsequent declarations

1.      A State Party may make a subsequent declaration, other than a declaration authorised under Article 60, at any time after the date on which this Convention has entered into force for it, by notifying the Depositary to that effect.

2.      Any such subsequent declaration shall take effect on the first day of the month following the expiration of six months after the date of receipt of the notification by the Depositary. Where a longer period for that declaration to take effect is specified in the notification, it shall take effect upon the expiration of such longer period after receipt of the notification by the Depositary.

3.      Notwithstanding the previous paragraphs, this Convention shall continue to apply, as if no such subsequent declarations had been made, in respect of all rights and interests arising prior to the effective date of any such subsequent declaration.

### Article 58 — Withdrawal of declarations

1.      Any State Party having made a declaration under this Convention, other than a declaration authorised under Article 60, may withdraw it at any time by notifying the Depositary. Such withdrawal is to take effect on the first day of the month following the expiration of six months after the date of receipt of the notification by the Depositary.

2.      Notwithstanding the previous paragraph, this Convention shall continue to apply, as if no such withdrawal of declaration had been made, in respect of all rights and interests arising prior to the effective date of any such withdrawal.

### Article 59 — Denunciations

1.      Any State Party may denounce this Convention by notification in writing to the Depositary.

2.      Any such denunciation shall take effect on the first day of the month following the expiration of twelve months after the date on which notification is received by the Depositary.

3.      Notwithstanding the previous paragraphs, this Convention shall continue to apply, as if no such denunciation had been made, in respect of all rights and interests arising prior to the effective date of any such denunciation.

### Article 60 — Transitional provisions

1.      Unless otherwise declared by a Contracting State at any time, the Convention does not apply to a pre-existing right or interest, which retains the priority it enjoyed under the applicable law before the effective date of this Convention.

2.      For the purposes of Article 1(v) and of determining priority under this Convention:

    (a)      "effective date of this Convention" means in relation to a debtor the time when this Convention enters into force or the time when the State in which the debtor is situated becomes a Contracting State, whichever is the later; and

    (b)      the debtor is situated in a State where it has its centre of administration or, if it has no centre of administration, its place of business or, if it has more than one place of business, its principal place of business or, if it has no place of business, its habitual residence.

3.      A Contracting State may in its declaration under paragraph 1 specify a date, not earlier than three years after the date on which the declaration becomes effective, when this Convention and the Protocol will become applicable, for the purpose of determining priority, including the protection of any existing priority, to pre-existing rights or interests arising under an agreement made at a time when the debtor was situated in a State referred to in sub-paragraph (b) of the preceding paragraph but only to the extent and in the manner specified in its declaration.

### Article 61 — Review Conferences, amendments and related matters

1.      The Depositary shall prepare reports yearly or at such other time as the circumstances may require for the States Parties as to the manner in which the international regimen established in this Convention has operated in practice. In preparing such reports, the Depositary shall take into account the reports of the Supervisory Authority concerning the functioning of the international registration system.

2.      At the request of not less than twenty-five per cent of the States Parties, Review Conferences of States Parties shall be convened from time to time by the Depositary, in consultation with the Supervisory Authority, to consider:

(a)  the practical operation of this Convention and its effectiveness in facilitating the asset-based financing and leasing of the objects covered by its terms;

(b)  the judicial interpretation given to, and the application made of the terms of this Convention and the regulations;

(c)  the functioning of the international registration system, the performance of the Registrar and its oversight by the Supervisory Authority, taking into account the reports of the Supervisory Authority; and

(d)  whether any modifications to this Convention or the arrangements relating to the International Registry are desirable.

3.    Subject to paragraph 4, any amendment to this Convention shall be approved by at least a two-thirds majority of States Parties participating in the Conference referred to in the preceding paragraph and shall then enter into force in respect of States which have ratified, accepted or approved such amendment when ratified, accepted, or approved by three States in accordance with the provisions of Article 49 relating to its entry into force.

4.    Where the proposed amendment to this Convention is intended to apply to more than one category of equipment, such amendment shall also be approved by at least a two-thirds majority of States Parties to each Protocol that are participating in the Conference referred to in paragraph 2.

### Article 62 — Depositary and its functions

1.    Instruments of ratification, acceptance, approval or accession shall be deposited with the International Institute for the Unification of Private Law (UNIDROIT), which is hereby designated the Depositary.

2.    The Depositary shall:

(a)  inform all Contracting States of:

   (i)   each new signature or deposit of an instrument of ratification, acceptance, approval or accession, together with the date thereof;

   (ii)  the date of entry into force of this Convention;

   (iii) each declaration made in accordance with this Convention, together with the date thereof;

   (iv)  the withdrawal or amendment of any declaration, together with the date thereof; and

   (v)   the notification of any denunciation of this Convention together with the date thereof and the date on which it takes effect;

(b)  transmit certified true copies of this Convention to all Contracting States;

(c)     provide the Supervisory Authority and the Registrar with a copy of each instrument of ratification, acceptance, approval or accession, together with the date of deposit thereof, of each declaration or withdrawal or amendment of a declaration and of each notification of denunciation, together with the date of notification thereof, so that the information contained therein is easily and fully available; and

(d)     perform such other functions customary for depositaries.

IN WITNESS WHEREOF the undersigned Plenipotentiaries, having been duly authorised, have signed this Convention.

DONE at Cape Town, this sixteenth day of November, two thousand and one, in a single original in the English, Arabic, Chinese, French, Russian and Spanish languages, all texts being equally authentic, such authenticity to take effect upon verification by the Joint Secretariat of the Conference under the authority of the President of the Conference within ninety days hereof as to the conformity of the texts with one another.